1   **WO**

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                        FOR THE DISTRICT OF ARIZONA

10

11   United States of America,                    )

                         Plaintiff,               )

12                                                 )        No.  CR 19-2498-TUC-CKJ

     vs.                                           )

13                                                 )

     Jose De Jesus Moreno-Preciado,                )            **ORDER**

14                                                 )

                         Defendant.                )

15   _____   )

16          Pending before the Court is Defendant's Motion to Reduce Sentence Pursuant to 18

17   U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release Due to COVID-19 and Ineffective Medical

18   Care) (Doc. 53) filed by Jose De Jesus Moreno-Preciado ("Moreno-Preciado").   The

19   government has filed a response (Doc. 59) and Moreno-Preciado has filed a reply (Doc. 60).

20

21   *Background*

22          Moreno-Preciado pleaded guilty pursuant to a plea agreement to one count, Importation

23   of Methamphetamine.  This offense involved 18.47 kilograms of methamphetamine concealed

24   in a vehicle driven by Moreno-Preciado as he sought to enter the United States.   The plea

25   agreement provided for a stipulated sentence of 41-51 months, which is the advisory guideline

26   range when taking into account minor role and acceptance of responsibility, along with the safety

27   valve credit.  This sentence was below the 10-year mandatory minimum sentence although

28   Moreno-Preciado did not comply with safety-valve obligations. Moreno-Preciado asserts he did

1  not talk about the offense because he feared for his safety and the safety of his children.

2       At the time of the sentencing, the Court was aware of the risk of COVID-19 and that

3  Moreno-Preciado suffered from a rash.  Additionally, the Court considered counsel's argument

4  that the agreed upon range was disparate from sentences received by other persons who

5  committed similar offenses.  The Court departed downward from the calculated guideline range

6  of 78-97 months imprisonment pursuant to the plea agreement and sentenced Moreno-Preciado

7  to a 45 month term of imprisonment to be followed by three years of supervised release.

8       Moreno-Preciado has been serving his sentence at CCA because people are not being sent

9  to the Bureau of Prisons (BOP) due to the threat of COVID-19 and overcrowding.   Moreno-

10  Preciado is 37 years old and obese.  He has served approximately one-third of his sentence and

11  has an anticipated release date of November 6, 2022.

12       Moreno-Preciado requests compassionate release and a reduction in his sentence due to

13  inadequate medical care and the ongoing risk of COVID-19.  He argues that he can be successful

14  without his further incarceration which overtaxes BOP resources.   As a first time offender,

15  Moreno-Preciado asserts he has learned a hard lesson and that he will not recidivate.

16

17  *First Step Act*

18       The First Step Act went into effect on December 21, 2018. See First Step Act of 2018,

19  Pub. L. No. 115-391, 132 Stat. 5194. Prior to the passage of the First Step Act, only the

20  Director of the BOP could file a motion for compassionate release.  Section 603(b) of the

21  First Step Act modified 18 U.S.C. § 3582(c)(1)(A) with the intent of "increasing the use and

22  transparency of compassionate release."  Pub. L. No. 115-391, 132 Stat. 5194, at *5239

23  (capitalization omitted).  That section now provides that a sentencing court may modify a

24  sentence either upon a motion of the Director of the BOP "or upon motion of the defendant

25  after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to

26  bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by

27  the warden of the defendant's facility . . . " 18 U.S.C. § 3582(c)(1)(A).

28

1      The Act provides that a sentence may be reduced for "extraordinary and compelling

2  reasons."   Additionally, district courts are granted broad discretion in determining whether

3  to grant relief.  *US v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *4 (C.D.

4  Cal. May 21, 2020), *citation omitted*.

5

6  *Compassionate Release*

7      Moreno-Preciado asserts that, while incarcerated, he is not receiving adequate medical

8  care:  treatment for his rash has been adversely affected by the pandemic because appointments

9  and treatments have been delayed and denied.  Further, although he had been referred by an

10  attending doctor for a re-evaluation by a dermatologist a non-attending corporate doctor denied

11  that request because Moreno-Preciado is housed in a short term facility.  Moreno-Preciado

12  asserts he cannot follow CDC guidelines regarding COVID-19 while incarcerated.  He further

13  asserts he has increased risk from COVID-19 because of his obesity.  Moreno-Preciado points

14  out that "[o]bese people 'who contracted SARSCoV-2 were 113% more likely than people of

15  healthy weight to land in the hospital, 74% more likely to be admitted to an ICU, and 48% more

16  likely to die.'" Motion, p. 11, *citing* https://www.sciencemag.org/news/2020/09/why-covid-19

17  -more-deadly-people-obesity- even-if-theyre-young.  An obese person is also more like to spread

18  the virus to others.  *Id*. At 12, *citing* https://www.hackensackmeridianhealth.org/HealthU/2020/

19  09/02/what-to-know-aboutobesity-and-covid-19/.  Further, Moreno-Precido asserts BOP has

20  failed to implement adequate protocols in light of the pandemic (e.g., inadequate testing,

21  isolation, personal protection equipment).  The parties disagree whether Florence - CAFCC,

22  where Moreno-Preciado is currently housed, has adequately responded to the risk of COVID-

23  19.   The Application Notes of the U.S. Sentencing Guidelines § 1B1.13 provides, in

24  relevant part, that extraordinary and compelling reasons exist if:

25     (A) Medical Condition of the Defendant.--

26          (I) The defendant is suffering from a terminal illness (i.e., a serious and
             advanced illness with an end of life trajectory). A specific prognosis of life

27          expectancy (i.e., a probability of death within a specific time period) is not
             required. Examples include metastatic solid-tumor cancer, amyotrophic lateral

28

1          sclerosis (ALS), end-stage organ disease, and advanced dementia.

2          (ii) The defendant is--

3                    (I) suffering from a serious physical or medical condition,

4                    (II) suffering from a serious functional or cognitive impairment, or

5                    (III) experiencing deteriorating physical or mental health because of the
           aging process,

6

7          that substantially diminishes the ability of the defendant to provide self-care
           within the environment of a correctional facility and from which he or she is
           not expected to recover.

8          * * * * *

9

U.S.S.G. 1B1.13, App. Notes.

10

11          In exercising discretion under § 3553(a) and the First Step Act, compassionate release

12     "due to medical conditions" is generally treated as "a rare event."  *White v. United States*,

13     378 F.Supp.3d 784, 787 (W.D. Mo. May 9, 2019); *see also United States v. Clark*, 2019 WL

14     1052020 (W.D.N.C. Mar. 5, 2019) (denying relief, which is "extraordinary"); *United States*

15     *v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. Apr. 3, 2019) (same); *United States v. Casey*,

16     No. 1:06CR00071, 2019 WL 1987311, at *1 (W.D. Va. May 6, 2019) (same).  Prisoners

17     typically only obtain relief after serving a significant term of incarceration. *See, e.g., United*

18     *States v. McGraw*, 2019 WL 2059488, at *5 (S.D. Ind. May 9, 2019) (granting the motion

19     and noting defendant already served "nearly 17 years, a significant sanction").

20          The Court considers that obesity as a "medical condition[ does] not rise to the level

21     of terminal illness or substantially diminish [Moreno-Preciado's] ability to provide self-care

22     from within [the facility]"  *United States v. Wilfred*, 2020 WL 4365531, at *4 (E.D. La. July

23     30, 2020).  Further, there is no basis to conclude that Moreno-Preciado is not receiving

24     adequate care for this condition.    The government agrees Moreno-Preciado's obesity may

25     put him at increased risk of severe illness should he contract COVID-19, but points out that

26     Moreno-Preciado fails to identify any other particular risk factor for contracting COVID-19

27     or health condition warranting compassionate release.    The Court does not find that

28     Moreno-Preciado's rash, and the treatment regarding it, qualifies as an extraordinary and

- 4 -

compelling reason warranting compassionate release. The Court agrees with the government that Moreno-Preciado's obesity may "qualify as an extraordinary and compelling reason under the application note." Response, Doc. 59, p. 7.  However, as stated by another district court:

> This Court is reluctant to find extraordinary and compelling circumstances warranting the release of inmates where the CDC's guidelines reflect only a possible heightened risk of severe illness from COVID-19, particularly where the condition at issue is one experienced by almost three quarters of the United States population over age twenty. *See* https://www.cdc.gov/nchs/fastats/obesity-overweight.htm (indicating that 71.6% of adults aged 20 and over in the United States are overweight).

*United States v. Pearson*, 2020 WL 7706618, at *3 (E.D. Mich. Dec. 29, 2020); *Wilfred*, 2020 WL 4365531, at *5 (relief denied to inmate with BMI of 38.4; "courts have found that obesity—alone or paired with hypertension—does not provide adequate grounds for compassionate release.").

Additionally, the requirement that the reduction is consistent with Sentencing Commission policy focuses on community safety.  The Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).  Factors to consider include the nature of the offense, the history and characteristics of the defendant, and the nature of the danger. *Id*.; *see also* 18 U.S.C. § 3142(g) factors.  While the Court does not disagree with the government that Moreno-Preciado may be susceptible to continued participation in drug trafficking, the Court does not find Moreno-Preciado is a significant danger to any other person or to the community.  *See* U.S.S.G. § 1B1.13(2), 18 U.S.C. § 3142(g).  The instant offense was Moreno-Preciado's first offense, he played a minor role in the offense, he accepted responsibility for his conduct, and he is not addicted to drugs or alcohol.

The Court also considers the § 3553(a) factors in considering whether compassionate release is warranted.  This offense did involve a significant amount of methamphetamine and Moreno-Preciado did not meet the safety valve requirements.  The sentence received by Moreno-Preciado reflected the seriousness of the offense, promoted respect for the law, provided just punishment, and acts to deter criminal conduct.  Reducing the sentence at this

1    time would defeat those goals. The Court finds this significant because Moreno-Preciado

2    has already received the benefit of a safety-valve reduction without meeting the safety valve

3    requirements. Additionally, the Court considers that it was aware of both Moreno-Preciado's

4    rash and the risk of COVID-19 when Moreno-Preciado was originally sentenced.

5         Moreno-Preciado asserts his sentence is significantly higher and disparate from others

6    in this District despite similar crimes and histories. Moreno-Preciado similarly presented this

7    argument at sentencing. Moreno-Preciado further states the guidelines overstate his culpability.

8    He also points out that he has served more of his sentence (38%) than other defendants who have

9    had their sentences reduced to time served. *See e.g.*, *United States v. Shehee*, 2020 WL 5229030,

10   at *3 (E.D. Wash. Sept. 1, 2020) (defendant had served just 9 months of a 70 month sentence

11   (13%) when he was ordered released); *United States v. Locke*, 2020 WL 3101016 (W.D. Wash.

12   June 11, 2020) (defendant served 6 months of 62-month sentence (10%)); *United States v.*

13   *Gonzalez*, 2020 WL 1536155 (E.D. Wash. March 31, 2020) (defendant served 1 month of

14   10-month sentence (10%)); *United States v. Ben-Yhwh*, 2020 WL 1874125, at *2, *6 (D. Haw.

15   Apr. 13, 2020) (defendant served 8 months of a 60 month sentence (13%,) when he was ordered

16   released; *United States v. Barber*, 2020 WL 2404679, at *1 (D. Or. May 12, 2020) (defendant

17   had served just 8.5 months of a 60 month mandatory minimum sentence (14%) when he was

18   ordered released); *United States v. Torres*, 2020 WL 4019038, at *1, *4 (S.D. Fla., July 14,

19   2020) (defendant had served only 5 months of a 24 month sentence (21%) when he was ordered

20   released). Although Moreno-Preciado argues his sentence is disparate to similar cases and

21   cites to a number of cases, he does not take into consideration that some of those defendants

22   met the safety valve requirements. *See e.g. United States v. Aguilar-Rivera*, 4:19-cr-2305-

23   RM-JR, *United States v. Duarte-Burgos*, 4:19-cr-1828-JAS-BGM.

24        A "specific showing that compassionate release is warranted in this case," *United*

25   *States v. Eberhart*, 448 F. Supp. 3d 1086, 1088 (N.D. Cal. 2020), has not been made. *See*

26   *also United States v. Van Cleave*, No. CR03-247-RSL, 2020 WL 2800769, at *7, n. 4 (W.D.

27   Wash. May 29, 2020) (consideration of "extraordinary and compelling circumstances" in

28

1   compassionate release motions are fact-intensive and dependent on the specific

2   circumstances that a moving defendant faces); *United States v. Hall*, No. 2:09-CR-

3   00116-RHW-1, 2020 WL 5016929 (E.D. Wash. Aug. 18, 2020) (compassionate release

4   motions amid the COVID-19 pandemic require a fact-intensive inquiry, taking into account

5   the unique circumstances of each individual defendant).

6         The Court finds the § 3553(a) factors weigh against a compassionate release.

7   Moreover, extraordinary and compelling reasons warranting a reduction in sentence has not

8   been shown.  Although Moreno-Preciado is obese, this condition does not substantially

9   diminish his ability to provide self-care within the environment of a correctional facility.  His

10  circumstances are, in the present pandemic, far closer to ordinary for a person of his age than

11  extraordinary.  The Court finds Moreno-Preciado's circumstances do not justify the rare

12  event of granting compassionate release.  In its discretion, the Court will deny Moreno-

13  Preciado's request.

14        Accordingly, IT IS ORDERED Motion to Reduce Sentence Pursuant to 18 U.S.C. §

15  3582(c)(1)(A)(i) (Compassionate Release Due to COVID-19 and Ineffective Medical Care)

16  (Doc. 53) is DENIED.

17        DATED this 19th day of February, 2021.

18

19

20        _____
          Cindy K. Jorgenson
21        United States District Judge

22

23

24

25

26

27

28